950 So.2d 488 (2007)
Jennifer BORDA, Appellant,
v.
EAST COAST ENTERTAINMENT, INC., a Florida corporation, d/b/a The Voodoo Lounge, Appellee.
Nos. 4D06-1080, 4D06-840.
District Court of Appeal of Florida, Fourth District.
February 28, 2007.
Rehearing Denied March 28, 2007.
*489 Roberta M. Deutsch of Roberta M. Deutsch, P.A., and Carey M. Fischer of Carey M. Fischer, P.A., Boca Raton, for appellant.
James V. Facciolo, III, of The Law Offices of James V. Facciolo, III, P.A., Fort Lauderdale, for appellee.
HAZOURI, J.
Appellant, Jennifer Borda, appeals from the trial court's decision to grant appellee, East Coast Entertainment, Inc., d/b/a The Voodoo Lounge's ("the Lounge"), motions for directed verdict and for remittitur. We reverse and remand for reinstatement of the verdict.
Borda filed a complaint against the Lounge alleging a cause of action for premises liability. A jury trial was had at which the following facts were adduced. On Saturday, March 6, 2004, at about 10:30 P.M., Borda and a female friend went to the Lounge. Borda parked her car in a parking lot by the Lounge. While in the Lounge, Borda was accosted by a woman who pushed her several times. Borda pushed back. Several of the Lounge's bouncers approached them, and two of them took the woman away. Another bouncer approached Borda and asked what happened. She told him the woman had started pushing her. The bouncer asked if she had ever seen the woman before, and Borda responded that she had not. She did not know why the woman was pushing her. The bouncer spoke with other people in the vicinity and then told Borda not to worry about it. He said they had taken care of the woman, and she would not come back in.
Borda and her girlfriend ordered drinks and had taken one sip when Borda turned and saw the woman quickly approaching her again. The woman hit Borda in the face causing it to bleed and pulled Borda's hair. Another person started hitting her from behind, and her clothes were being ripped off. Borda fell to the ground, and they beat her on her back. Different bouncers approached, and two of them got the woman off Borda. Another bouncer grabbed Borda around the waist and lifted her off the ground. In doing so, his thumb went inside her blouse and pulled the blouse so that her breast was exposed. He carried her out and ignored her pleas to let her fix her blouse.
The bouncer carried Borda out the Lounge's front door and placed her on the other side of the sidewalk. The woman who attacked her was standing nearby. Borda pulled herself together and spoke to the police officer who was standing outside the door and speaking to the bouncers. This officer was paid by the Lounge to provide security. Borda told the officer that she was assaulted and pointed out the woman to him. He responded that he had not seen anything, and it was not his problem. She pleaded with him to help her, but he walked away.
Borda then realized that she had lost her purse and went to the bouncer at the front door. He went in and retrieved the purse, the contents of which were intact. Borda, who was upset and trying to cover herself with her ripped skirt, and her girlfriend walked down an alley toward the parking lot. The two women who attacked her and a man were sitting in the alley between the building and the parking lot where they were walking. Borda tried to rush by them, but the two women attacked *490 her again. While trying to fight them off, the man came from behind and kicked her twice on her left knee. Four men who were leaving the Lounge ran up and helped Borda get away. She and her girlfriend got in her car and left.
Borda's injuries required medical treatment, including arthroscopic surgery on her knee. She also has a scar on her eye and does not feel safe going out in public anymore.
After Borda presented her case, the Lounge moved for a directed verdict on the issue of its liability for injuries which resulted from the attack outside the Lounge. The trial court agreed but reserved ruling until after the jury returned its verdict. The jury was instructed on premises liability but was not instructed to make specific findings on which damages occurred inside and which occurred outside. The jury found the Lounge liable for premises liability and awarded Borda $150,000. After the verdict, the trial court granted the Lounge's motion for directed verdict as to its liability for injuries which occurred outside the Lounge. The Lounge's motion for remittitur was also granted reducing the award to $10,000 or, if Borda did not accept, ordering a new trial on damages limited to only those that occurred inside the Lounge. The trial court found that "[a]ny damages that occurred to the Plaintiff outside of the Defendant's premises or any Verdict for damages awarded by the jury for what happened to her outside the Defendant's premises is against the manifest weight of the evidence." Borda appeals these postverdict rulings.
The standard of review of a trial court's ruling on a motion for directed verdict is de novo. Flagstar Cos., Inc. v. Cole-Ehlinger, 909 So.2d 320, 322 (Fla. 4th DCA 2005).
The power to direct a verdict should be exercised with caution, and it should never be granted unless the evidence is of such a nature that under no view which the jury might lawfully take of it, favorable to the adverse party, could a verdict for the latter be upheld. The movant admits every reasonable inference that a jury might fairly and reasonably arrive at favorable to the adverse party.
Little v. Publix Supermarkets, Inc., 234 So.2d 132, 133 (Fla. 4th DCA 1970).
In Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla. 4th DCA 1991), disapproved on other grounds, Angrand v. Key, 657 So.2d 1146 (Fla.1995), this court held:
Generally, the proprietor of a place of public entertainment owes an invitee a duty to use due care to maintain the premises in a reasonably safe condition commensurate with the activities conducted thereon. Although not an insurer of a patron's safety, the proprietor of a bar or saloon is bound to use every reasonable effort to maintain order among the patrons, employees, or those who come upon the premises and are likely to produce disorder to the injury or inconvenience of patrons lawfully in the place of business. The risk of harm must be foreseeable, and the determination of a breach of this duty depends on the facts of each individual case.
Id. at 325 (citations omitted).
In Goldberg v. Florida Power & Light Co., 899 So.2d 1105 (Fla.2005), the court discussed the initial concern in an action for negligence, the duty of care:
The determination of the existence of a duty of care in a negligence action is a question of law. "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others."
*491 Id. at 1110 (citations omitted). This duty may arise from the general facts of the case. Id.
In McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), the supreme court discussed the zone of risk:
Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. Florida . . . recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others. As we have stated:
Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.
Id. at 503 (citations and footnote omitted).
In Shelburne, where injuries to the plaintiffs occurred off the premises of the Rodeo Bar and in an adjacent parking lot not owned by the hotel but used by its customers, this court relied upon an Indiana case which held:
An invitor's duty normally extends only to its "premises." However, we recognize that in this case "the premises" may not be limited to the area actually owned or leased by the Pub because its business activities extended beyond its legal boundaries.

A duty of reasonable care may be extended beyond the business premises when it is reasonable for invitees to believe the invitor controls premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation. Here, the record supports a reasonable inference the Pub knew its parking lot was insufficient for its patron's use; additionally, the Pub was aware its patrons customarily used the parking lot across the street while patronizing it. The initial confrontation occurred at the entrance to this lot, which had similarly overflowed.
Indeed, we are unconvinced either Ember or other patrons of the Pub lost their invitee status while waiting outside the Pub's legal boundaries. In the recent case of Alholm v. Wilt (1984), Minn. App., 348 N.W.2d 106, the occurrence of an assault in a public alley behind the tavern did not bar the tavern's liability. The Minnesota Appellate Court found a reasonable inference of foreseeability of the attack due to the aggressive conduct of the patrons involved preceding their departure from the tavern.
Shelburne, 576 So.2d at 329 (quoting Ember v. B.F.D., Inc., 490 N.E.2d 764, 772 (Ind.Ct.App.2d Dist.1986), reh'g denied, 521 N.E.2d 981 (1988) (emphasis added)).
The evidence presented proved that the Lounge's duty of care to its invitees extended to the nearby parking lot which was one used by the up to 2000 invitees patronizing the Lounge. It was a foreseeable zone of risk, especially when both patrons were ejected at the same time and placed in the same area.
In Hall v. Billy Jack's, Inc., 458 So.2d 760 (Fla.1984), Hall, a patron at Billy Jack's lounge, was assaulted by another patron. The fight moved outside and when it was over and Hall got up, he turned to face the lounge manager and another patron. That patron then hit Hall over the head with a pool cue he had taken out of the lounge in violation of its rules. Hall said the blow was without provocation, and the patron said it was in self-defense. The jury returned a verdict against Billy Jack's and the patron, jointly. The district court reversed as to Billy *492 Jack's. In reinstating the verdict, the supreme court held:
A tavern owner is not required to protect the patron from every conceivable risk; he owes only a duty to protect against those risks which are reasonably foreseeable. Foreseeability may be established by proving that a proprietor had actual or constructive knowledge of a particular assailant's inclination toward violence or by proving that the proprietor had actual or constructive knowledge of a dangerous condition on his premises that was likely to cause harm to a patron. . . . If the lounge management knew or should have known of a general or specific risk to Hall and failed to take reasonable steps to guard against that risk and if, because of that failure, Hall was injured, Billy Jack's may be shown to have breached its duty and may be held financially responsible for Hall's injuries.
Id. at 761-62 (citations omitted).
Because a proprietor of a lounge is bound to use every reasonable effort to maintain order among its patrons and that duty may be extended to outside the premises, if the proprietor knows his patrons normally use the adjacent premises in connection with the patronage of the Lounge, as was shown in this case, there is a duty of reasonable care.
With respect to proximate cause, the supreme court stated the principles in Goldberg v. Florida Power & Light Co., 899 So.2d 1105 (Fla.2005):
The issue of proximate cause is generally a question of fact concerned with "whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." This Court has stated that "harm is `proximate' in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." The proper question is whether the individual's conduct is "so unusual, extraordinary or bizarre (i.e., so `unforeseeable') that the policy of the law will relieve the [defendant] of any liability for negligently creating this dangerous situation." In this Court's words, "The law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience." Where reasonable persons could differ as to whether the facts establish proximate causation, the issue must be left to the fact finder.
Id. at 1116 (citations omitted).
The jury reasonably found that the Lounge's actions in placing Borda along with her assailant together outside, and the Lounge's employee's inaction in the face of Borda's request for help were the proximate cause of Borda's injuries.
Because the remittitur was based upon the trial court's conclusion that Borda was not entitled to any damages resulting from injuries which occurred outside the Lounge, it also erred in granting the remittitur. We therefore reverse the trial court's order granting the directed verdict and remand for the reinstatement of the jury's verdict.
Reversed and Remanded.
KLEIN, J., concurs.
MAY, J., concurs specially with opinion.
MAY, J., concurring specially.
I concur in the holding based upon the unique facts of the case and the failure of the verdict form to apportion damages among the separate altercations that occurred. I write out of concern that this case is misinterpreted to carte blanche expand liability beyond the defendant's premises.
*493 "A tavern owner is not required to protect the patron from every conceivable risk; he owes only a duty to protect against those risks which are reasonably foreseeable." Hall v. Billy Jack's, Inc., 458 So.2d 760, 761 (Fla.1984) (citing Stevens v. Jefferson, 436 So.2d 33, 34 (Fla. 1983)). Such "[f]orseeability may be established by proving that a proprietor had actual or constructive knowledge of a particular assailant's inclination toward violence or by proving that the proprietor had actual or constructive knowledge of a dangerous condition on his premises that was likely to cause harm to a patron." Id. (citing Fernandez v. Miami Jai-Alai, Inc., 386 So.2d 4 (Fla. 3d DCA 1980)). As explained by the majority opinion, premises liability has been extended beyond the four corners of the premises when the plaintiff is within a foreseeable zone of risk. See Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla. 4th DCA 1991), disapproved on other grounds, Angrand v. Key, 657 So.2d 1146 (Fla.1995).
Here, the premises owner knew of two altercations that had occurred on the premises. The plaintiff testified that she requested the off-duty police officer employed by the premises owner to help her because her assailants were located within feet from the lounge between her and her car. The parking lot was located fifty yards from the front door of the lounge. Under these very specific and limited facts, I agree that the plaintiff was within a foreseeable zone of risk created by the premises owner's invitation to patronize the lounge. I do not believe however that every premises owner is responsible for third-party attacks that occur once the patron has left the premises.
In addition, the verdict form failed to apportion the damages according to the separate altercations. The jury awarded the plaintiff $15,000 for past medical expenses, $7,000 for lost earnings, $100,000 for past and $28,000 for future pain and suffering. This verdict form prevented the trial court from knowing what damages were attributable to the various altercations. I therefore agree that the $10,000 remittitur was entered in error.
For these reasons, I concur with the majority.