991 So.2d 938 (2008)
Joseph STANLEY and Elaine Stanley, Appellants,
v.
Rebecca MARCEAUX, Appellee.
No. 4D07-3523.
District Court of Appeal of Florida, Fourth District.
August 20, 2008.
Rehearing Denied October 27, 2008.
Cayla B. Tenebaum and Roberta G. Mandel of Stephens, Lynn, Klein, Lacava, Hoffman & Puya, Miami, for appellants.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, and Steven B. Phillips of Littky, Smith, Phipps, Casas & Phillips, P.A., West Palm Beach, for appellee.
TAYLOR, J.
Rebecca Marceaux sued the owners of her duplex, Joseph and Elaine Stanley, after a portion of her kitchen ceiling collapsed and fell on her head and shoulder. She tried her case before a jury on the sole claim that Mr. Stanley negligently *939 repaired the roof above the adjacent apartment and that his negligent repair caused the ceiling in her apartment to erode and ultimately collapse. The jury returned a verdict for the plaintiff and awarded her $194,782.47 in damages. The defendants appeal, contending that the trial court erred in failing to direct a verdict in their favor. Defendants assert that the plaintiff did not present any evidence to support her allegations of negligent repair of the roof or show a causal connection between the roof repair and her alleged injuries. They argue that the jury could have found liability only by impermissible stacking of inferences. We agree and reverse the judgment.
In September 2004, the plaintiff was a tenant in a single-story duplex residence owned and maintained by the defendants, Joseph and Elaine Stanley, in Palm Beach County. The plaintiff occupied the east duplex unit. On September 5, 2004, Hurricane Frances came ashore in Palm Beach County. About three weeks later, Hurricane Jeanne hit the area. Shortly thereafter, a tree fell and struck the edge of the roof of the west duplex unit, causing the interior ceiling of that unit to completely collapse.
Plaintiff testified that Joseph Stanley removed the tree approximately a week later and repaired the damage to the roof and interior ceiling of the residence adjoining plaintiff's unit. According to plaintiff, the ceiling of the west unit then collapsed again. She testified that it was wet.
On November 4, 2004, while plaintiff was cooking breakfast, the drywall ceiling of her kitchen fell down on top of her, striking her head and shoulder. Plaintiff testified that water came into her apartment. She said that the drywall that fell was wet and that there was water on the ceiling beams, the floor, and on the drywall.
Plaintiff sued the Stanleys in a two-count amended complaint, alleging premises liability and negligence. However, the parties agreed to try only plaintiff's claim for negligent roof repair. Plaintiff's theory was that Mr. Stanley negligently repaired the damaged portion of the roof above the adjacent apartment, thereby permitting moisture to enter through that area and then migrate to and accumulate over the portion of her kitchen ceiling that eroded and collapsed. At trial, however, plaintiff did not call any expert witnesses or present any direct evidence to support these claims.
At the close of the plaintiff's case, the defendants moved for a directed verdict. They argued that plaintiff presented no evidence that the manner in which Mr. Stanley performed the roof repair constituted a failure to use due care. Defendants also argued that there was no evidence showing a causal connection between the repair of the hole in the roof and the collapse of the plaintiff's kitchen ceiling. Defendants argued that plaintiff presented only circumstantial evidence and relied upon impermissible inferences stacked upon inferences. The trial court denied the defendants' motion for directed verdict.
After denial of the motion, Joseph Stanley testified that he fixed the roof by nailing down a new 4 foot by 4 foot section of plywood. He then tarred the plywood, installed Rubberoid, and spread tar all the way around the Rubberoid. That, according to Mr. Stanley, sealed it. He testified that the section of the ceiling in the west unit came down just as a result of the tree impacting the roof. He denied that there was ever any evidence of water in either unit. He offered no explanation for the collapse of the kitchen ceiling in plaintiff's apartment.
*940 On May 30, 2007, the jury returned a verdict finding Joseph Stanley negligent and awarding the plaintiff $194,782.47 in damages. The verdict form presented only negligence as a potential ground of recovery. This verdict was reduced to final judgment against the defendants on that same date. The defendants timely moved for judgment notwithstanding the verdict, arguing the same grounds that were asserted in the motion for directed verdict. The trial court denied the motion.
In reviewing the denial of a motion for directed verdict, we must view the evidence in a light most favorable to the non-moving party. Allen v. Stephan Co., 784 So.2d 456, 457 (Fla. 4th DCA 2000). If there is any evidence to support a verdict for the non-moving party, it is improper to enter a directed verdict. Liggett Group, Inc. v. Davis, 973 So.2d 467, 475 (Fla. 4th DCA 2007).
The rules governing the use of circumstantial evidence in a civil case were set forth in Nielsen v. City of Sarasota, 117 So.2d 731, 733 (Fla.1960):
The sum of all of these opinions is that in a civil case, a fact may be established by circumstantial evidence as effectively and as conclusively as it may be proved by direct positive evidence. The limitation on the rule simply is that if a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences.
The rule that an inference may not be stacked on another inference is designed to protect litigants from verdicts based upon conjecture and speculation. Voelker v. Combined Ins. Co. of Am., 73 So.2d 403, 407 (Fla.1954).
An example of this rule in action is found in McCormick Shipping Corp. v. Warner, 129 So.2d 448, 449-50 (Fla. 3d DCA 1961). There, a passenger brought suit against a cruise ship owner for injuries she sustained in a fall while descending the ladder from an upper bunk. The plaintiff alleged that the defendant was negligent in failing to inspect the ladder properly and warn of its defective condition. The third district reversed the denial of the directed verdict in that case, stating:
The jury was required under the circumstances to infer that there was negligence on the part of the appellant in providing a defective or inadequate ladder and upon that inference, to infer further that such negligence was the proximate cause of the fall. Clearly the record does not support the conclusion that the initial inference was justified to the exclusion of any other reasonable inferences and therefore, the rule prohibiting the finding of an ultimate fact on an inference based upon an inference controls.
Id. at 449-50.
The defendants argue that, as in McCormick, the jury in this case was invited to infer that the landlord's attempted repair of the roof was negligently performed and then stack upon that inference the further inference that the defective roof repair caused the ceiling in the plaintiff's unit to collapse weeks later. Defendants argue that the verdict can stand only if the first inference, i.e., that the landlord negligently performed the repair, was established to the exclusion of any other reasonable inference. Although it is possible that the roof repair was negligently undertaken, one could also reasonably infer that any later leak had some other *941 cause, such as concealed damage from the two recent hurricanes. Because the first inference was not established to the exclusion of all other reasonable inferences, the trial court should have granted the defendants' motion for a directed verdict. See also Malon v. Serv. & Mgmt. Co., 416 S.W.2d 44 (Mo.App.1967) (affirming directed verdict where tenant failed to show that landlord did not use ordinary care in performing roof repairs).
Reversed.
KLEIN and DAMOORGIAN, JJ., concur.