DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BROWARD EXECUTIVE BUILDERS, INC.,**
Appellant,

v.

**LILIANA ZOTA,** as Guardian of MERCEDES ZOTA**; MIGUEL ZOTA;
SUSANA ZOTA; MIGUEL FRANCISCO ZOTA,**
Appellees.

No. 4D14-555

[May 11, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Peter M. Weinstein, Judge; L.T. Case No. CACE 04003388.

Raoul G. Cantero and John-Paul Rodriguez of White & Case LLP, Miami, and Jack T. Frost of Kelley Kronenberg, Plantation, for appellant.

Matthew D. Weissing of Farmer Jaffe Weissing Edwards Fistos & Lehrman P.L., Fort Lauderdale, for appellees.

KLINGENSMITH, J.

Broward Executive Builders, Inc. ("appellant") appeals the final judgment entered against it following a jury verdict in favor of Liliana Zota, as guardian of Mercedes Zota; Miguel Zota; Susana Zota; and Miguel Francisco Zota (collectively, "appellees"). Appellant contends that the jury reached its verdict in this case by improperly stacking inferences. We agree, and reverse.[1]

In 2004, while painting the ceiling above a second story catwalk in a home that was under construction, Mercedes Zota fell and suffered serious injuries. No one witnessed the fall, but Mercedes was found shortly thereafter lying at the foot of a staircase below the catwalk. At the time of the accident, Mercedes was using a stepladder and two scaffolds situated upon the catwalk to reach and paint the ceiling.

---

[1] In light of this conclusion, we decline to address appellant's other issues.

The evidence established that Mercedes was responsible for setting up at least one of the scaffolds, and that neither the scaffolds nor the catwalk itself had guardrails in place. Appellees alleged that appellant, as general contractor for the construction project, breached its duty to maintain a safe work environment by failing to install minimum mandatory guardrails on the catwalk as required by the applicable Occupational Safety and Health Administration guidelines, thereby causing Mercedes' injuries.

Appellees claimed that Mercedes fell from the catwalk itself, while appellant countered that Mercedes likely fell from either the stepladder or one of the scaffolds. Because there were no witnesses to the fall and Mercedes was unable to testify, the parties compensated for this lack of direct evidence by engaging experts who served as the principal witnesses in their respective attempts to reconstruct the accident. After the court denied appellant's motion for directed verdict, the jury found appellant to be fifty percent liable for Mercedes' injuries, while also finding Mercedes herself to be equally at fault.

We review the denial of a motion for directed verdict de novo, while considering "the evidence and all inferences of fact in the light most favorable to the nonmoving party." *See Christensen v. Bowen*, 140 So. 3d 498, 501 (Fla. 2014). Although directed verdicts in negligence actions should be "granted in an especially cautious manner," *Phillips v. Van's of Lake Worth, Inc.*, 620 So. 2d 253, 253 (Fla. 4th DCA 1993), they must be granted where "the evidence is of such a nature that under no view which the jury might lawfully take of it, favorable to the adverse party, could a verdict for the latter be upheld." *Borda v. E. Coast Entm't, Inc.*, 950 So. 2d 488, 490 (Fla. 4th DCA 2007) (quoting *Little v. Publix Supermarkets, Inc.*, 234 So. 2d 132, 133 (Fla. 4th DCA 1970)).

Florida law is clear that:

> [A plaintiff] must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

*Sanders v. ERP Operating Ltd. P'ship*, 157 So. 3d 273, 277 (Fla. 2015) (alteration in original) (quoting *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984)).

Additionally, establishing that a defendant's actions were the legal cause of a plaintiff's injury "does not require direct testimony from the injured person or an eyewitness. . . . Rather, legal cause may be established by circumstantial evidence, such as the testimony of accident reconstruction experts . . . ." *Brown v. Glade & Grove Supply, Inc.*, 647 So. 2d 1033, 1036 (Fla. 4th DCA 1994). We have previously held that in negligence cases involving circumstantial evidence:

> [A] fact may be established by circumstantial evidence as effectively and as conclusively as it may be proved by direct positive evidence. The limitation on the rule simply is that if a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact *unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences.*

*Stanley v. Marceaux*, 991 So. 2d 938, 940 (Fla. 4th DCA 2008) (emphasis added) (quoting *Nielsen v. City of Sarasota*, 117 So. 2d 731, 733 (Fla. 1960)).

Where an inference is based upon circumstantial evidence in a civil case, it must be the only reasonable inference that can be formed from that evidence for the plaintiff to build further inferences upon it. *See Voelker v. Combined Ins. Co. of Am.*, 73 So. 2d 403, 407 (Fla. 1954) (stating that in cases where inferences are drawn from circumstantial evidence, "only if the prior or basic inference is established to the exclusion of any other reasonable theory should another be drawn from it"); *see also Stanley*, 991 So. 2d at 940. The purpose of this rule against stacking inferences is "to protect litigants from verdicts based on conjecture and speculation." *Stanley*, 991 So. 2d at 940. In a negligence action, if a plaintiff relies upon circumstantial evidence to establish a fact, fails to do so to the "exclusion of all other reasonable inferences," but then stacks further inferences upon it to establish causation, a directed verdict in favor of the defendant is warranted. *See id.* at 941.

For appellees to prevail in this case, the greater weight of the evidence drawn from the legally sustainable inferences must prove that: 1) Mercedes fell; 2) she fell from a significant height; 3) she fell from a certain area on the catwalk; 4) the appropriate and required guardrails would have prevented the fall from that area on the catwalk; and 5) Mercedes suffered injuries from that fall.

3

Several of these inferences could have been reasonably drawn from the circumstantial evidence presented. The fact that Mercedes suffered a fall can be presumed to be established to the exclusion of all other reasonable inferences based on the evidence; that is to say, "such inference is elevated for the purpose of further inference to the dignity of an established fact." *Voelker,* 73 So. 2d at 407. Additionally, the fact that the fall occurred from a height of several feet was also a reasonable inference, given the nature and extent of her injuries and the medical expert testimony. This inference can also be elevated to the same level as an established fact. *Id.* That Mercedes suffered injuries as a result of her fall (as opposed to some other potential cause) was reasonable as well.

However, appellees cannot attach liability to appellant unless they can show that the guardrails would have prevented Mercedes from falling. This determination relies upon the inference that Mercedes fell from a place (and in such a manner) that would have made the presence of the guardrails on the catwalk efficacious. The problem here is that the circumstantial evidence did not exclude the reasonable possibility that she fell from many equally-likely locations in the catwalk area, such as the stepladder or one of the scaffolds. In fact, there was no evidence presented at trial that would permit any inference about precisely where Mercedes was when she fell, what she was doing at the time she fell, or what caused her to fall in the first place.

We have reviewed similar cases from other district courts, and find them to be helpful in reaching our decision. In *Wong v. Crown Equipment Corp.,* 676 So. 2d 981, 983 (Fla. 3d DCA 1996), the Third District affirmed the trial court's summary judgment in favor of the defendant, in part because no one witnessed the decedent's fall from a stockpicker, and because the plaintiff failed to produce an accident reconstructionist at trial. The court stated:

> It is, of course, a fair inference that he fell from a height to his death, but it is impossible to tell whether he fell from the stockpicker or an adjacent shelf or what he was doing just before he fell because no one witnessed how this accident happened; moreover, the plaintiff has no accident reconstruction expert in the case. It was, therefore, impossible for the plaintiff to prove that the alleged defect in the stockpicker was in any way causally related to the plaintiff decedent's fall; accordingly, the trial court properly entered summary judgment for the defendants.

*Id.* at 983.

4

Although appellees did present testimony from an accident reconstruction expert during the trial, that expert could not opine as to whether it was more likely than not Mercedes fell from a particular location. In essence, his testimony could be summarized as follows: Mercedes fell from a significant height, and was subsequently injured.

Similarly, in *Adkins v. Economy Co.,* 495 So. 2d 247, 247–48 (Fla. 2d DCA 1986), the plaintiff fell from a scissors-lift work platform and alleged that the structure was "defective and unreasonably dangerous because the side railings and chains were not high enough to prevent a person from falling over the side of the platform." The Second District also affirmed summary judgment in favor of the defendant, citing a lack of evidence as to what caused the fall:

> Because there is no competent evidence, direct or circumstantial, concerning the cause of the fall or where plaintiff was located or what he was doing when he fell, for plaintiff's cause of action to succeed it must be assumed that plaintiff was standing on the platform inside the railings, that for some reason he fell, and that the railings were too low to prevent his falling over the railings to the pavement below. However, other equally reasonable assumptions are possible, such as that plaintiff was sitting or standing or climbing on the railings, in which case the alleged low height of the railings would have had no effect on preventing the fall.

> The plaintiff has the burden of proving his cause of action. In this case the record before the trial court failed to show the existence of any facts from which the jury could reasonably infer the cause of the accident.

*Id.* at 248.

While the circumstantial evidence in this case supports a finding that Mercedes fell on her head from a height of several feet with no clear indication of how or why, it does not establish that it is *more likely than not* she fell from a certain location on the catwalk *because* no guardrails were in place to prevent the fall. Appellees believe that, under the circumstances, it was more likely than not this occurred, as opposed to some other explanation. We disagree. There are a myriad of very plausible explanations and other reasonable inferences that can be drawn from the circumstantial evidence in this case.

5

As appellees argue, Mercedes could indeed have fallen from a location on the catwalk such that the next inference, that the guardrails would have prevented her from falling, might be permissible. However, she also could have fallen from the top of the stepladder or the top of one of the scaffolds, rendering the guardrails' capacity to prevent her from falling over the edge of the catwalk much less certain, given that her fall could have originated from a point *above* where they would have been situated. Finally, it is not clear that the guardrails would have stopped Mercedes from falling if she was ascending or descending the stepladder or one of the scaffolds at the time she fell. It simply cannot be determined where she was or what she was doing when the accident occurred, such that all other reasonable possibilities are excluded.[2]

Of all the questions surrounding Mercedes' fall, where she fell from was certainly a basic and important fact to establish. The next inference regarding the effectiveness of any guardrails was not independent of this fact. *See Castillo v. E.I. Du Pont De Nemours & Co., Inc.,* 854 So. 2d 1264, 1279 (Fla. 2003) (stating that inference stacking does not occur where "[e]ach fact inferred is independent of the other"). In a case involving dependent facts, where circumstantial evidence is utilized to establish an inference, that inference must be exclusively established as the only reasonable inference before a subsequent dependent inference can be considered. Although the jury could have inferred where Mercedes fell from based on the circumstantial evidence, it would not have been the only reasonable conclusion. Thus, the jury could not pyramid upon that decision to answer the next issue ripe for consideration in the inferential chain: whether the required guardrails would have prevented her fall had they been in place.

The circumstances of Mercedes' injury are undeniably tragic. Nonetheless, because there is no evidence of how she fell or where exactly she fell from, it would be complete speculation and conjecture for any trier of fact to conclude that the lack of guardrails contributed to causing her injuries. The burden of proof rested upon appellees to prove appellant's negligence. Where there is evidence that the harm could have occurred even in the absence of the appellant's conduct, proof of causation cannot be based on mere speculation, conjecture, or inferences drawn from other non-exclusive inferences. Although we recognize that a plaintiff need not

---

[2] We could fill several pages of this opinion discussing scenarios which are contrary yet equal to appellees' account of the accident. However, our analysis is limited to considering only those other *possible* inferences that were indeed *reasonable* under the known facts, and in "accord[] with logic and reason or human experience." *See Voelker,* 73 So. 2d at 406.

6

prove causation with absolute certainty, it must at least introduce evidence "which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." *Sanders*, 157 So. 3d at 277 (quoting *Gooding*, 445 So. 2d at 1018). Proof that raises mere speculation, suspicion, surmise, or conjecture is not enough to sustain a plaintiff's burden of persuasion.

In our system of jurisprudence, we require more than just dartboard decision-making by juries to sustain verdicts. Allowing a jury to derive inferences from unproven allegations serves no purpose other than to erode a plaintiff's burden of proof, and to raise rank speculation to the same status as established fact. Without some evidence to show from where Mercedes fell to the exclusion of the other various reasonable possibilities, appellees are unable to establish that a scenario attaching liability to the appellant is more likely to have occurred than one which exonerates them. No jury under these facts could have drawn a sustainable inference about where Mercedes was or what she was doing at the time she fell. Accordingly, a jury could not reasonably conclude that the presence of the guardrails would have altered the outcome. We therefore reverse for entry of a directed verdict in favor of appellant.

*Reversed and Remanded.*

CIKLIN, C.J., and WARNER, J., concur.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

7